1  Andrew C. Bryman, Esq., SBN 97457
   LAW OFFICE OF BRYMAN & APELIAN
2  24025 Park Sorrento, Suite 220
   Calabasas, California  91302
3  Phone:  (818) 225-5151
   Fax:      (818) 225-5155
4

5  Attorneys for Plaintiffs, CAROL BOPP, HEATHER BOPP
                And JASON BOPP
6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10  CAROL BOPP, HEATHER BOPP          )   Case No.
    and JASON BOPP,                   )
11                                    )   COMPLAINT FOR DAMAGES:
                Plaintiffs,           )
12                                    )   SURVIVAL (CCP §377.30)/WRONGFUL
    vs.                               )   DEATH (CCP §377.60):
13                                    )
    LIVANOVA DEUTSCHLAND,             )   1. STRICT PRODUCTS LIABILITY -
14  GMBH (f/k/a SORIN GROUP           )      DESIGN DEFECT
    DEUTSCHLAND, GMBH) and            )   2. STRICT PRODUCTS LIABILITY -
15  SORIN GROUP USA, INC.             )      MANUFACTURING DEFECT
                                      )   3. STRICT PRODUCTS LIABILITY -
16                                    )      FAILURE TO WARN
                Defendant(s).         )   4. NEGLIGENCE
17                                    )   5. LOSS OF CONSORTIUM
    _____   )
18                                        DEMAND FOR TRIAL BY JURY

19                          __CIVIL COMPLAINT__

20       Plaintiffs, CAROL BOPP, HEATHER BOPP and JASON BOPP, by way of a

21  Complaint against LIVANOVA DEUTSCHLAND, GMBH (f/k/a SORIN GROUP

22  DEUTSCHLAND, GMBH) and SORIN GROUP USA, INC., alleges as follows:

23                      __JURISDICTION AND VENUE__

24       1.  This court has subject matter jurisdiction over this action pursuant to the

25  diverse citizenship of the parties. 28 USC Section 1332(a)(2). Plaintiffs CAROL BOPP

26  and HEATHER BOPP are citizens and residents of the State of California, while Plaintiff

27  JASON BOPP is a citizen and resident of the State of Tennessee.  Defendant,

28  LIVANOVA DEUTSCHLAND, GMBH is a foreign corporation headquartered in

CIVIL COMPLAINT                          1

1 Munich, Germany.

2     2. Defendant, SORIN GROUP USA, INC. has a principal place of business in

3 Arvada, Colorado. Personal jurisdiction exists over defendants LIVANOVA

4 DEUTSCHLAND, GMBH and SORIN GROUP USA, INC. in the U.S. and in

5 California due to the general and specific contacts that these defendants maintain.

6 Defendants maintain those contacts presently and did so at all times material to this

7 action. The amount in controversy exceeds $75,000.00.

8     3. Venue is proper in this District pursuant to 28 U.S.C. Section 1391 as a

9 substantial portion of the acts and/or omissions giving rise to Plaintiffs' claims resulted

10 from defendants' activities within this jurisdiction and defendants conduct substantial

11 business within this jurisdiction.  Defendant SORIN GROUP USA, INC. is also

12 registered  with the California Secretary of State and has consented to service of

13 process in California.

14     4. Plaintiff, CAROL BOPP is an adult individual and citizen of the State of

15 California, residing at 43 Cane Peak Court, Wofford Heights, California. Plaintiff,

16 HEATHER BOPP is an adult individual and citizen of the State of California, residing at

17 100 Cane Peak Court, Wofford Heights, California. Plaintiff, JASON BOPP is an adult

18 individual and citizen of the State of Tennessee, residing at 7138 Majors Landing Lane,

19 Carryton, Tennessee. Defendant LIVANOVA DEUTSCHLAND, GMBH (f/k/a SORIN

20 GROUP DEUTSCHLAND, GMBH) (hereafter LIVANOVA) is a foreign for-profit

21 corporation headquartered in Munich, Germany. SORIN design, manufactured and

22 marketed the Sorin 3T Heater-Cooler device (hereafter "Sorin HCD"). Defendant,

23 SORIN GROUP USA, INC. (Hereafter SORIN USA) is a U.S. designer, manufacturer,

24 marketer and distributor of the Sorin HCD with a principal place of business in Arvada,

25 Colorado. Defendant, SORIN USA has been registered as a foreign entity doing

26 business in California since 1999 and has consented to service of process in California.

27 <center>**GENERAL ALLEGATIONS**</center>

28     5.    At all times mentioned herein, Plaintiff CAROL BOPP was the wife of

1   Decedent Donald Bopp and is a resident of Wofford Heights, located in Kern County,

2   California.

3       6.      Plaintiff CAROL BOPP is Decedent Donald Bopp's Successor-in-Interest

4   and is entitled to bring both a survival and wrongful death civil action for the death of

5   Decedent Donald Bopp pursuant to California Code of Civil Procedure Sections 377.30

6   and 377.60.

7       7.  Plaintiffs, HEATHER BOPP and JASON BOPP are the children of Carol and

8   Donald Bopp.

9       8.      Plaintiffs are informed and believe and based thereon allege that, at all

10  times herein mentioned, defendant SORIN USA is a Delaware Corporation and wholly

11  owned subsidiary of defendant LIVANOVA DEUTSCHLAND, GMBH, with its

12  principal place of business located at 14401 West 65th Way, Arvada, Colorado 80004.

13  Defendant SORIN USA is registered as a foreign corporation with the California

14  Department of State.  Upon information and belief, SORIN USA designed, tested,

15  assembled, manufactured, marketed, and/or sold the Sorin HCD used in the surgery of

16  DONALD BOPP.

17      9.      Plaintiffs are informed and believe and based thereon allege that, at all

18  times herein mentioned, defendant LIVANOVA is a foreign for profit corporation

19  headquartered in Munich, Germany. Upon information and belief, LIVANOVA designed,

20  tested, assembled, manufactured, marketed, and/or sold the Sorin HCD that was used

21  during Decedent Donald Bopp's heart surgery.

22      10.     Hereinafter, Defendants LIVANOVA and SORIN USA shall be collectively

23  referred to as the "SORIN DEFENDANTS."

24      11.     The incident herein sued upon occurred on or about September 29, 2015,

25  during open heart surgery performed on DONALD BOPP at Kaiser Foundation Hospital

26  in Los Angeles, California (hereinafter "Kaiser Hospital").  Decedent Donald Bopp's last

27  surgery was on August 28, 2017, after which he expired at Kaiser Hospital.

28      12.     Plaintiffs only became initially aware of the possible cause of Donald

CIVIL COMPLAINT                           3

1   Bopp's illness and ultimate death upon receiving a Notice from Kaiser Hospital dated

2   March 1, 2017 advising her of the issues with the Sorin HCD.  It was not until Plaintiff

3   CAROL BOPP's receipt of July 17, 2017 blood test results from Kaiser Hospital that

4   Mycobacterium infection in Donald Bopp was confirmed. Donald Bopp deceased on

5   August 28, 2017 following surgery at Kaiser Hospital to address the Mycobacteria

6   infection.

7         13.    At all material times, the SORIN DEFENDANTS were in the business of

8   developing, designing, licensing, manufacturing, distributing, selling, marketing,

9   advertising, delivering, and/or  introducing their Sorin HCD into the stream of

10  commerce, including Los Angeles, California.

11        14.    At all material times, the Sorin HCD was used during open heart surgery

12  at Kaiser Hospital, and specifically during the bypass surgery performed on Decedent

13  Donald Bopp on September 29, 2015.

14        15.    The SORIN DEFENDANTS knew or should have known, based on their

15  own information, investigation, and/or testing, and based on an outbreak of cases in

16  Europe reported in·medical literature as early as 2011, of the association of NTM

17  infections with the use of their Sorin HCD when used in heart surgery.

18        16.    Upon information and belief, on or about July 14, 2014, the SORIN

19  DEFENDANTS sent out an "Important Information" letter to hospitals that purchased

20  the Sorin HCD. The letter was addressed and otherwise made available to users of the

21  Sorin HCD, including Kaiser Hospital, alerting them of the risk of infection from non-

22  tuberculous mycobacterium ("NTM") as a result of using the Sorin HCD.

23        17.    In August 2014, Sorin discovered that the water supply at its Sorin

24  Deutschland manufacturing facility was contaminated with Mycobacterium. This

25  information was not made public until the FDA issued a "Safety Communication" on

26  June 1, 2016.

27        18.    The SORIN DEFENDANTS knew or should have known, based on their

28  own information, investigation, and/or testing and based on an outbreak of NTM

1  infections in Europe, that there was a risk of NTM infections when its Sorin HCD was

2  used during heart surgery.

3      19.    Despite knowledge of the design defect and mycobacterium

4  contamination during the manufacture of their Sorin HCD, and despite knowledge of the

5  catastrophic injuries, conditions, complications, infections, and/or deaths caused by the

6  use of their Sorin HCD during heart surgery, the  SORIN DEFENDANTS continued to

7  manufacture, market, advertise, sell, and/or deliver its Sorin HCD to hospitals

8  throughout the United States, including Kaiser Hospital in Los Angeles, California.

9      20.    The SORIN DEFENDANTS knew or should have known, prior to Donald

10  Bopp's heart surgery on September 29, 2015, that use of the Sorin HCD during surgery

11  posed serious risks to the health and lives of patients undergoing surgery, particularly

12  heart surgery. Yet it failed to take action or warn against these dangers.

13      21.    On September 29, 2015, Donald Bopp underwent heart bypass surgery at

14  Kaiser Hospital.  Upon information and belief, a Sorin HCD was used during Donald

15  Bopp's heart surgery.

16      22.    Donald Bopp contracted a Mycobacterium infection during his September

17  29, 2015 heart surgery from the Sorin HCD used during the procedure. This was not

18  discovered until blood test results of July 17, 2017.  Donald Bopp's most recent surgery

19  for this issue was on August 28, 2017, after which Donald Bopp expired as a result of

20  injuries sustained from use of the Sorin HCD..

21      23.    On June 15, 2015, the SORIN DEFENDANTS issued a safety notice to 11

22  hospitals that purchased a Sorin HCD, again advising them of the potential for

23  Mycobateria infection and providing update instructions for cleaning and disinfecting the

24  Sorin HCD.

25      24.    A pathology report from Kaiser Hospital showed that cultures taken from

26  decedent Donald Bopp's blood grew out Mycobacterium.

27      25.    Upon information and belief, the original Sorin HCD cleaning and

28  disinfecting process involved six steps. The updated process, posted on Sorin's

1   website, included fifty-six steps to "enhance" the cleaning and disinfecting process.

2      26.   On July 15, 2015, the FDA issued a Class 2 Recall of the Sorin HCD

3   due to the "[p]otential colonization of ... Mycobacteria, in Sorin Heater-Cooler devices."

4      27.   On or about September 18, 2015, the FDA received MAUDE Adverse

5   Event Report from a health care provider that found an unusual cluster of NTM in

6   patients after cardiothoracic surgery. Additionally, the health care provider expressed

7   concern about inconsistent cleaning and disinfecting instructions for the Sorin HCD.

8      28.   On October 15, 2015, the FDA issued a Safety Communication explaining

9   that the Agency received thirty-two Medical Device Reports of infections associated with

10   heater-cooler device (such as the Sorin HCD) contamination.

11      29.   On October 21, 2015, The Centers for Disease Control and Prevention

12   ("CDC") issued an Interim Practical Guidance Communication to raise awareness about

13   the relationship between NTM infections and heater-coolers.

14      30.   A public health investigation of heater-cooler devices in Switzerland found

15   air culture samples that were positive for NTM.

16      31.   On December 29, 2015, the United Stated Food and Drug Administration

17   ("FDA") issued a warning letter to LivaNova's CEO identifying several "serious"

18   violations of the Federal Food, Drug and Cosmetic Act ("the Act") regarding the Sorin

19   HCD, including the following:

20      a. The devices were "adulterated" within the meaning of section 501 (h) of the

21      Act in that "methods used in, or the facilities or controls used for, their

22      manufacture, packing, storage, or installation are not in conformity with the

23      current good manufacturing practice requirements of the Quality System

24      regulation found at Title 21, Code of Federal Regulations (CFR), Part 280;

25      b. Failure to establish and maintain procedures for the identification,

26      documentation, validation or, where appropriate, verification, review and

27      approval of design changes before their implementation, as required by 21 CFR

28      820.30(I);

c. Failure to validate a process, with a high degree of assurance and approved according to established procedures, a process where results cannot be fully verified by subsequent inspection and test, as required by 21 CFR 820.75(a);

d. Failure to adequately develop, implement, and maintain written Medical Device Reporting ("MDR") procedures, as required by 21 CFR 803 .171;

e. Failure to submit to the FDA an approved application for premarket approval (PMA) in effect pursuant to section 51 59( a) of the Act or an approved application for an investigational device exemption under section 520(g) of the Act;

f. Failure to notify the FDA of the intent to introduce the device into commercial distribution as required by section 51 O(k) of the Act, resulting in misbranding of the Heater Cooler System 3T as defined by section520( o) of the Act;

g. Failure to submit to the FDA a new 510(k), to assure that the appropriate testing and validation of the cleaning/disinfecting protocols had taken place, following significant labeling changes that can affect the safety or effectiveness of the device, specifically, distributing the Sorin HCD with Modified Instructions for Use (Versions 013 and 014) with respect to the operating, maintaining, cleaning, and disinfecting of the device, including adding more instruction details, changes to the cleaning/disinfecting process (e.g. chemicals used and amounts used), and expansion of the process to include the entire circuit instead of only the tanks;

h. Failure or refusal to furnish material or information, with respect to the device in question, to the FDA as required by or under section 519 of the Act and 21 CFR Part 806-Medical Devices; Reports of Corrections and Removals, resulting in "misbranding" of the Sorin 3T Heater Cooler System device as defined in section 502(t)(2) of the Act;

I. Failure to submit to the FDA a written report, as required by21 CFR 806.10, of any correction or removal of advice initiated to remedy a violation of the Act

1   caused by the device which may present a risk to health.

2       32.    On June 1, 2016, the FDA issued a "Safety Communication" warning

3   patients who had undergone surgery in which a Sorin HCD was used that NTM

4   contamination was found on the production line and in the water supply at the Sorin

5   Deutschland manufacturing facility.

6       33.    On July 17, 2017, a Kaiser Hospital laboratory record diagnosed

7   Mycobacterium Avium Complex in Decedent Donald Bopp's blood test results. He

8   deceased on August 28, 2017 after undergoing another heart procedure to address the

9   Mycobacterium infection.

10       34.    At all relevant times, the SORIN DEFENDANTS marketed their Sorin HCD

11   to the medical community, hospitals, administrators, cardiothoracic surgeons,

12   perfusionists, an/or other consumers as a safe, effective, reliable medical device to be

13   used during heart surgery, such as the one performed on Donald Bopp.

14       35.    At all relevant times, the SORIN DEFENDANTS marketed and sold their

15   Sorin HCD to the medical community, hospitals, administrators, cardiothoracic

16   surgeons, perfusionists, and/or other consumers when it knew, or should have known,

17   of a serious design defect that exposed heart surgery patients to NTM, a potentially life

18   threatening infection.

19       36.    At all relevant times, the SORIN DEFENDANTS failed to adequately test

20   or research the risks and benefits of their Sorin HCD.

21       37.    At all relevant times, feasible alternative designs and products other than

22   the Sorin HCD have existed.

23       38.    At all relevant times, the Sorin HCD was used during heart surgery

24   procedures, in a manner foreseeable by the SORIN DEFENDANTS.

25       39.    At all relevant times, the SORIN DEFENDANTS provided incomplete,

26   insufficient, inadequate, and misleading instructions and training to the users of their

27   Sorin HCD.

28       40.    At all relevant times, the Sorin HCD used in the heart surgery of Donald

1   Bopp was in the same or substantially similar condition as when it left the possession of

2   the SORIN DEFENDANTS.

3       41.   Donald Bopp contracted a Mycobacteria infection from a contaminated

4   Sorin HCD during her heart surgery at Kaiser Hospital on September 29, 2015, from

5   which he ultimately died on August 28, 2017 and which was not diagnosed until July 17,

6   2017

7       42.  The conduct of all Defendants increased the risk of harm for, was a

8   substantial factor in causing, and/or was the actual cause of, the injuries and damages

9   suffered by decedent Donald Bopp and Plaintiff CAROL BOPP.

10      43.   As a direct and legal result of the wanton, reckless, tortious, and/or

11  negligent conduct ·of Defendants, Donald Bopp experienced multiple injuries and

12  damages, which left him disabled and unable to care for himself and ultimately resulted

13  in his death.

14      44.   Plaintiffs have been damaged in an amount according to proof but in

15  excess of $75,000.00.

16                          **FIRST CAUSE OF ACTION**

17      **BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS FOR STRICT PRODUCTS**

18  **LIABILITY - DESIGN DEFECT**

19      45.   Plaintiffs hereby incorporate paragraphs 1 through 44, inclusive, of this

20  Complaint as though fully set forth herein.

21      46.   At all relevant times, the SORIN DEFENDANTS were engaged in the

22  business, design, development, testing, promotion, manufacture, assembly, and/or sale

23  of the Sorin HCD used in the heart surgery of Donald Bopp at Kaiser Hospital on

24  September 29, 2015.

25      47.   The Sorin HCD was defective at the time it was designed, manufactured,

26  assembled, and sold by the SORIN DEFENDANTS in that its defective design

27  prevented it from being reliably and consistently cleaned, disinfected and maintained

28  based on the expected and reasonably foreseeable use of the Sorin HCD with its

1    accompanying instructions, thus rendering the Sorin HCD unsafe for use by Kaiser

2    Hospital for the use for which it was intended, namely the heart surgery of Donald

3    Bopp, the ultimate user, on September 29, 2015.

4        48.    The Sorin HCD used by Kaiser Hospital for the heart surgery of Donald

5    Bopp on September 29, 2015, was expected to reach, and did reach, the intended

6    consumer, Kaiser Hospital, without substantial relevant change in the condition in which

7    it was sold by the SORIN DEFENDANTS.

8        49.    At the time the Sorin HCD left the possession and control of the SORIN

9    DEFENDANTS, it was in a defective condition, unreasonably dangerous to Donald

10   Bopp and others, in that its design permitted bacteria to collect, grow, and/or flourish,

11   and subsequently to come in direct contact with and be aerosolized to contaminate the

12   surrounding area in the operating room suite during Donald Bopp's heart surgery.

13       50.    At all relevant times, the SORIN DEFENDANTS intended their Sorin HCD

14   to be used during heart surgery cases, and knew or should have known that it would

15   have been used in patients such as Donald Bopp, who underwent heart surgery at

16   Kaiser Hospital.

17       51.    At all relevant times, the use of the Sorin HCD during heart surgery cases,

18   such as in patients like Donald Bopp, was reasonably foreseeable to the SORIN

19   DEFENDANTS as their Sorin HCD was used in the manner for which it was intended by

20   Kaiser Hospital who purchased and used the Sorin HCD for the ultimate consumer,

21   Decedent Donald Bopp.

22       52.    At all relevant times, Donald Bopp could not have, by the exercise of

23   reasonable care, discovered the design defects and risks as noted herein, nor could he

24   have been expected to perceive the danger, and thus the unreasonably dangerous and

25   hazardous condition of the Sorin HCD was unknowable to Donald Bopp.

26       53.    At all relevant times, the Sorin HCD used during the heart surgery of

27   Donald Bopp, at Kaiser Hospital on September 29, 2015 was defectively designed,

28   rendering it defective and unreasonably dangerous and hazardous when it left the

1 possession of the SORIN DEFENDANTS.

2        54.    At all relevant times, the Sorin HCD designed, manufactured, marketed,

3 sold, and/or placed in the interstate stream of commerce in the United States by the

4 SORIN DEFENDANTS was inherently and unreasonably dangerous and defective, and

5 was unfit and unsafe for its intended use and/or reasonably foreseeable misuses, and

6 did not meet and/or perform to the expectations of consumers such as Donald Bopp,

7 and his health care providers, including Kaiser Hospital.

8        55.    At all relevant times, Donald Bopp was the ultimate consumer of the

9 defective Sorin HCD used during his heart surgery at Kaiser Hospital on September 29,

10 2015.

11        56.    At all relevant times, Donald Bopp, had the reasonable expectation that

12 the Sorin HCD would not be unreasonably dangerous and defective, and would not

13 increase his risk of contracting a life-threatening Mycobacteria infection.

14        57.    At all relevant times, the design defect of the Sorin HCD created a

15 potentially catastrophic and/or life-threatening risk to patients such as Donald Bopp that

16 far outweighed its utility and far outweighed the cost of designing, manufacturing and

17 producing an alternative design that was not defective.

18        58.    The use of the Sorin HCD was the actual cause of the injuries and

19 damages sustained by Decedent Donald Bopp and Plaintiffs CAROL BOPP, HEATHER

20 BOPP and JASON BOPP.

21        59.    As a direct and legal result of the use of the defective Sorin HCD, Donald

22 Bopp was catastrophically injured and sustained severe pain, suffering and disability

23 which ultimately resulted in his death.

24        60.    As a direct result of the negligence, carelessness, willful and/or unlawful

25 conduct of the SORIN DEFENDANTS, Decedent Donald Bopp was compelled to and

26 did employ physicians and surgeons to treat and care for him, and did necessarily incur,

27 expenses for physicians, surgeons, hospitalizations, nurses, x-rays, medicines, and

28 other medically related expenses, all according to proof.

61.     As a direct result of the negligence, carelessness, willful and/or unlawful conduct of the SORIN DEFENDANTS, and the injuries caused thereby, Plaintiff CAROL BOPP did necessarily incur funeral and burial expenses in an amount according to proof.

62.     By reason of its designing, manufacturing, assembling and distributing the Sorin HCD in a defective and unreasonably dangerous condition, the SORIN DEFENDANTS are strictly liable for Donald Bopp's injuries, damages and wrongful death and CAROL BOPP, HEATHER BOPP and JASON BOPP's injuries and damages.

63.     The conduct of the SORIN DEFENDANTS described herein, was aggravated by the reckless, willful and/or wanton conduct made in reckless and conscious disregard of the health, safety, rights and well-being of consumers, including Donald Bopp.  Plaintiffs, therefore, requests imposition of punitive damages against the SORIN DEFENDANTS.

## SECOND CAUSE OF ACTION

## BY ALL PLAINTIFFS AGAINST DEFENDANTS FOR STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT

64.     Plaintiffs hereby incorporate paragraphs 1 through 63, inclusive, of this Complaint as though fully set forth herein.

65.     At all relevant times, the SORIN DEFENDANTS were engaged in the business, design, development, testing, promotion, manufacture, assembly and/or sale of the Sorin HCD used in the heart surgery of Donald Bopp at Kaiser Hospital on September 29, 2015.

66.     The Sorin HCD was defective at the time it was designed, manufactured, assembled and sold by the SORIN DEFENDANTS in that its defective design prevented it from being reliably and consistently cleaned, disinfected and maintained based on the expected and reasonably foreseeable use of the Sorin HCD with its accompanying instructions, thus rendering the Sorin HCD unsafe for use by Kaiser

1  Hospital for the use for which it was intended, the heart surgery of Donald Bopp, the

2  ultimate user, on September 29, 2015.

3       67.    The Sorin HCD used by Kaiser Hospital for the heart surgery of Donald

4  Bopp, on September 29, 2015, was expected to reach, and did reach, the intended

5  consumers, Kaiser Hospital and Donald Bopp, without substantial relevant change in

6  the condition in which it was sold by the SORIN DEFENDANTS.

7       68.    At the time the Sorin HCD left the possession and control of the SORIN

8  DEFENDANTS it was in a defective condition, unreasonably dangerous to Donald Bopp

9  and others, in that its manufacture permitted bacteria to collect, grow, and/or flourish,

10  and subsequently be aerosolized to contaminate the surrounding area in the operating

11  room suite during Donald Bopp's heart surgery.

12       69.    At all relevant times, the SORIN DEFENDANTS knew or should have

13  known, that the manufacturing defects in their Sorin HCD allowed bacterial colonization

14  to which patients like Donald Bopp would be, and were in fact, exposed during heart

15  surgery, thus posing a significant risk of bodily injury and death.

16       70.    At all relevant times, the SORIN DEFENDANTS intended their Sorin HCD

17  to be used during heart surgery cases, and knew or should have known that it would

18  have been used in patients like Donald Bopp, who underwent heart surgery at Kaiser

19  Hospital.

20       71.    At all relevant times, the use of the Sorin HCD during heart surgery cases,

21  in patients such as Donald Bopp, was reasonably foreseeable to the SORIN

22  DEFENDANTS, as their Sorin HCD was used in the manner for which it was intended

23  by Kaiser Hospital, which purchased and used the Sorin HCD for the ultimate

24  consumer, Decedent Donald Bopp.

25       72.    At all relevant times, Donald Bopp could not, by the exercise of

26  reasonable care, have discovered the design or manufacturing defects and risks as

27  noted herein, nor could he have been expected to perceive the danger, and thus the

28  unreasonably dangerous and hazardous condition of the Sorin HCD was unknowable to

1 | Donald Bopp.

2 |      73.    At all relevant times, the Sorin HCD used during the heart surgery of
3 | Donald Bopp, at Kaiser Hospital on September 29, 2015 was defectively manufactured,
4 | rendering it defective and unreasonably dangerous and hazardous when it left the
5 | possession of the SORIN DEFENDANTS.

6 |      74.    At all relevant times, the Sorin HCD designed, manufactured, marketed,
7 | sold and/or placed in the interstate stream of commerce in the United States by the
8 | SORIN DEFENDANTS, was inherently and unreasonably dangerous and defective, and
9 | was unfit and unsafe for its intended and/or reasonably foreseeable uses, and did not
10 | meet and/or perform to the expectations of consumers such as Donald Bopp, and his
11 | health care providers, including Kaiser Hospital.

12 |      75.    At all relevant times, Donald Bopp, was the ultimate consumer of the
13 | defective Sorin HCD used during his heart surgery at Kaiser Hospital on September 29,
14 | 2015.

15 |      76.    At all relevant times, Donald Bopp, had the reasonable expectation that
16 | the Sorin HCD would not be unreasonably dangerous and defective, and would not
17 | increase his risk of contracting a life-threatening Mycobacteria infection.

18 |      77.    At all relevant times, the design defect of the Sorin HCD created a
19 | potentially catastrophic and/or life-threatening risk to patients such as Donald Bopp that
20 | far outweighed its utility and far outweighed the cost of designing, manufacturing and
21 | producing an alternative design that was not defective.

22 |      78.    The use of the Sorin HCD was the actual cause of the injuries and
23 | damages sustained by and death of Decedent Donald Bopp and the injuries and
24 | damages of Plaintiffs CAROL BOPP, HEATHER BOPP and JASON BOPP.

25 |      79.    As a direct and legal result of the use of the defective Sorin HCD, Donald
26 | Bopp was catastrophically injured, sustained severe pain, suffering and disability which
27 | ultimately resulted in his death.

28 |      80.    As a direct result of the negligence, carelessness and/or unlawful conduct

1  of the SORIN DEFENDANTS, Decedent Donald Bopp was compelled to and did

2  employ physicians and surgeons to treat and care for him, and did necessarily incur

3  expenses for physicians, surgeons, hospitalizations, nurses, x-rays, medicines, and

4  other medically related expenses, all according to proof.

5        81.    As a direct result of the negligence, carelessness and/or unlawful conduct

6  of the SORIN DEFENDANTS and the injuries and death caused thereby, Plaintiff

7  CAROL BOPP did necessarily incur funeral and burial expenses in an amount

8  according to proof.

9        82.    By reason of its design, manufacture, assembly and distribution of the

10  Sorin HCD in a defective and unreasonably dangerous condition, the SORIN

11  DEFENDANTS are strictly liable for Decedent Donald Bopp's injuries, damages and

12  wrongful death and CAROL BOPP, HEATHER BOPP and JASON BOPP's injuries,

13  damages and Loss of Consortium.

14        83.    The conduct of the SORIN DEFENDANTS, described herein, was

15  aggravated by the reckless, willful and/or wanton conduct made in reckless and

16  conscious disregard of the health, safety, rights and well-being of consumers and their

17  families, including Donald Bopp and Plaintiffs CAROL BOPP, HEATHER BOPP and

18  JASON BOPP.  Plaintiffs, therefore, requests imposition of punitive damages against

19  the SORIN DEFENDANTS.

20                            **THIRD CAUSE OF ACTION**

21  **BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS FOR STRICT PRODUCTS**

22  **LIABILITY - FAILURE TO WARN**

23        84.    Plaintiffs hereby incorporate by reference paragraphs 1 through 83 as

24  though fully set forth herein.

25        85.    At the time the Sorin HCD left the possession and control of the SORIN

26  DEFENDANTS, it was in a defective condition and unreasonably dangerous in that it

27  contained inadequate warnings and/or instructions to alert consumers, including Kaiser

28  Hospital and the ultimate consumer, Donald Bopp, of the dangerous risks and

propensity to cause injury due to its defective design, subjecting Donald Bopp to risks that exceeded the benefits of the product and risks that exceeded the expectations of any consumer, including, but not limited to, the risks of life-threatening Mycobacteria infections.

86.    The SORIN DEFENDANTS negligently and/or willfully failed to properly and adequately warn and instruct consumers such as Donald Bopp, or his health care provider, Kaiser Hospital, as to the safest and most effective methods of maintaining and/or cleaning the defective Sorin HCD.

87.    The SORIN DEFENDANTS negligently and/or willfully failed to properly and adequately warn and instruct consumers such as Donald Bopp or his health care provider, Kaiser Hospital, that the defective design of their Sorin HCD prevented the adequate cleaning and disinfection that would prevent life-threatening infections from Mycobacteria.

88.    Had the SORIN DEFENDANTS provided adequate warnings and/or instructions regarding the defective design or manufacture of their Sorin HCD, Decedent Donald Bopp would not have consented to the use of the Sorin HCD.

89.    The  SORIN DEFENDANTS negligently and/or willfully misrepresented the safety, risks and benefits of their Sorin HCD to Donald Bopp and his healthcare provider, Kaiser Hospital, while understating the risks and exaggerating the benefits to advance their own financial interests.

90.    The failure of the SORIN DEFENDANTS to sufficiently warn Kaiser Hospital and ultimately Donald Bopp of the dangers associated with the use of their Sorin HCD, was the actual cause of and/or a substantial factor in causing, the injuries to and death of Donald Bopp and the damages of Plaintiffs CAROL BOPP, HEATHER BOPP and JASON BOPP.

91.    As a direct result of the negligence, carelessness, willful and/or unlawful conduct of the SORIN DEFENDANTS, Decedent Donald Bopp was compelled to and did employ physicians and surgeons to treat and care for him, and did necessarily incur,

1  expenses for physicians, surgeons, hospitalizations, nurses, x-rays, medicines, and

2  other medically related expenses, all according to proof.

3       92.    As a direct result of the negligence, carelessness, willful and/or unlawful

4  conduct of the SORIN DEFENDANTS, and the injuries and death caused thereby,

5  Plaintiff CAROL BOPP did necessarily incur funeral and burial expenses in an amount

6  according to proof.

7       93.    The conduct of the SORIN DEFENDANTS described herein, was

8  aggravated by the reckless, willful and/or wanton conduct made in reckless and

9  conscious disregard of the health, safety, rights and well-being of consumers and their

10  families, including Donald Bopp and Plaintiffs CAROL BOPP, HEATHER BOPP and

11  JASON BOPP.  Plaintiffs, therefore, request imposition of punitive damages against the

12  SORIN DEFENDANTS.

13                         **FOURTH CAUSE OF ACTION**

14     **BY ALL PLAINTIFFS AGAINST DEFENDANTS FOR NEGLIGENCE**

15       94.    Plaintiff incorporates by reference herein paragraphs 1 through 93,

16  inclusive, of this Complaint as though fully set forth herein.

17       95.    At all times herein mentioned, the SORIN DEFENDANTS provided a

18  Sorin HCD for use by Kaiser Hospital on surgical patients such as plaintiff Donald Bopp

19  and others who needed heart surgery.  As a consequence of defendants' herein

20  described negligent acts/omissions, Decedent Donald Bopp sustained severe injuries

21  as a result of the defects in the Sorin HCD as set forth above, which ultimately resulted

22  in his death.

23       96.  At all times herein mentioned the SORIN DEFENDANTS had a duty to

24  properly design, manufacture, sell, test, maintain, repair, inspect and warn of said

25  defects in the Sorin HCD that rendered it dangerous and unsafe for its intended use.

26       97.  At all times herein mentioned, the SORIN DEFENDANTS knew, or in the

27  exercise of reasonable care should have known, that their Sorin HCD was negligently

28  designed, manufactured, sold, tested, inspected, maintained, repaired, contained

1    inadequate warnings, lacked appropriate safety guards and devices, and that it was

2    likely to injure the ultimate consumer, such as Donald Bopp, if used during heart

3    surgery.

4         98.  The SORIN DEFENDANTS so negligently designed, tested, inspected,

5    maintained, repaired, warned regarding the hazards and lack of appropriate safety

6    devices on their Sorin HCD, that the same was defective and dangerous, unsafe for the

7    respective use and purpose for which it was intended or for reasonably foreseeable

8    misuses, when used by Kaiser Hospital on Decedent Donald Bopp.

9         99.    In addition to their negligence as set forth above, the SORIN

10   DEFENDANTS, *inter alia*, negligently failed to accurately and truthfully represent to the

11   public, the medical community, Kaiser Hospital and to Donald Bopp, that the Sorin HCD

12   had not been properly and adequately designed and tested, and that the device was

13   not safe for the use during heart surgery.

14        100.   The negligent misrepresentations of the SORIN DEFENDANTS that the

15   Sorin HCD had been properly and adequately designed, manufactured and tested and

16   that the Sorin HCD was safe and effective for use during open heart surgery were, in

17   fact, false.

18        101.   The SORIN DEFENDANTS failed to exercise ordinary and due care in all

19   of their conduct including, but not limited to, making representations regarding their

20   defective Sorin HCD, while they continued to manufacture, assemble, market,

21   advertise, promote, sell, distribute and place in interstate commerce their defective

22   Sorin HCD, because they negligently misrepresented the unreasonable and dangerous

23   risk of life-threatening infections.

24        102.   The SORIN DEFENDANTS knew, and had reason to know, that their

25   Sorin HCD had a defective design, had been inadequately tested, or had not been

26   tested at all, that their Sorin HCD lacked adequate and accurate warnings and

27   instructions, and/or that their Sorin HCD created a high risk and/or higher than

28   acceptable risk of life-threatening Mycobacteria infections, yet failed to properly

CIVIL COMPLAINT                              18

1  represent this information to the public, the medical community, Kaiser Hospital and to

2  the ultimate consumer, Donald Bopp.

3      103.   The negligence and/or negligent misrepresentations of the SORIN

4  DEFENDANTS were a substantial factor in causing and/or the actual cause, of the

5  injuries to and death of Donald Bopp.

6      104.   As a direct and legal result of the wanton, reckless, tortious, willful and/or

7  negligent conduct of the·SORIN DEFENDANTS as set forth herein, Donald Bopp was

8  catastrophically injured, which ultimately resulted in his death.

9      105.   As a direct result of the negligence, carelessness and/or unlawful conduct

10  of the SORIN DEFENDANTS, Decedent Donald Bopp was compelled to and did

11  employ physicians and surgeons to treat and care for him, and did necessarily incur

12  expenses for physicians, surgeons, hospitalizations, nurses, x-rays, medicines, and

13  other medically related expenses, all according to proof.

14      106.   As a direct result of the negligence, carelessness and/or unlawful conduct

15  of the SORIN DEFENDANTS, and the injuries and death caused thereby, plaintiff

16  CAROL BOPP did necessarily incur funeral and burial expenses in an amount

17  according to proof.

## FIFTH CAUSE OF ACTION

### BY PLAINTIFF CAROL BOPP AGAINST ALL DEFENDANTS-

### FOR LOSS OF CONSORTIUM

21      107.   Plaintiff CAROL BOPP hereby incorporates paragraphs 1 through 106,

22  inclusive, of this Complaint as though fully set forth herein.

23      108.   At all times herein mentioned, Plaintiff CAROL BOPP was the wife of

24  decedent Donald Bopp.

25      109.   Prior to the injuries suffered by and death of Decedent Donald Bopp, as

26  alleged herein, Donald Bopp was able to and did perform all marital duties of a

27  husband.

28      110.   As a direct legal result of the conduct of defendants, as described above,

1  Decedent Donald Bopp sustained permanent injuries to his person and ultimately died

2  from those injuries.

3      111.    By reason of the injuries suffered by and wrongful death of Decedent

4  Donald Bopp, Decedent Donald Bopp was and will continue to be, unable to perform all

5  marital duties of a husband and Plaintiff CAROL BOPP has suffered, and is certain to

6  suffer in the future, a loss of spousal consortium including, but not limited to, a loss of

7  her husband's comfort, affection, companionship, society, solace and moral support,

8  loss of sexual relations, and loss of his physical and financial assistance in the

9  operation and maintenance of the home in an amount according to proof.

10      **WHEREFORE**, Plaintiffs pray for judgment against defendants, and each of

11  them, as follows:

12      On the **FIRST THROUGH THIRD CAUSES OF ACTION** for:

13      1.    General damages according to proof;

14      2.    General damages for loss of care, comfort and society, according to

15           proof;

16      3.    Medical expenses, both past and future, according to proof;

17      4.    Funeral and burial expenses according to proof;

18      5.    Incidental expenses and damages according to proof;

19      6.    Punitive and Exemplary Damages, according to proof at the time and

20           sufficient to punish and make an example of the SORIN DEFENDANTS;

21      7.    Interest from the date of accident according to proof;

22      8.    For costs of suit incurred;

23      9.    This is an action for the breach of an obligation not arising from contract,

24  and Plaintiffs therefore, pursuant to California Code Section 3288, seek interest in the

25  discretion of the jury; and

26      10.    For such other and further relief as the Court deems just and proper.

27

28  / / / /

---

CIVIL COMPLAINT                          20

On the **FOURTH CAUSE OF ACTION** for:

1. General damages according to proof;

2. General damages for loss of care, comfort and society, according to proof;

3. Medical expenses, both past and future, according to proof;

4. Funeral and burial expenses according to proof;

5. Incidental expenses and damages according to proof;

6. Interest from the date of accident according to proof;

7. For costs of suit incurred;

8. This is an action for the breach of an obligation not arising from contract, and Plaintiffs therefore, pursuant to California Code Section 3288, seek interest in the discretion of the jury; and

9. For such other and further relief as the Court deems just and proper.

On the **FIFTH CAUSE OF ACTION** for:

1. General damages according to proof;

2. General damages for loss of love, affection, care, society, service, comfort, support, right to support, companionship, solace or moral support, expectations of future support and counseling as well as other benefits and assistance of decedent, Donald Bopp, according to proof;

3. Funeral and burial expenses according to proof;

4. All medical expenses according to proof;

5. Incidental expenses according to proof;

6. All loss of earnings and earning capacity according to proof;

7. Costs of suit incurred herein;

8. Prejudgment interest according to proof;

9. Damages for Plaintiffs' other economic loss according to proof; and

10. For such other and further relief as this Court may deem just and proper.

1

## **JURY TRIAL DEMANDED**

Plaintiffs demand trial by jury of all issues which may be tried to a jury.

Dated: May 31 , 2018

BRYMAN & APELIAN

By: _____
ANDREW C. BRYMAN
Attorneys for Plaintiffs.

CIVIL COMPLAINT

22